**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Raymond Earl MACHADO, Defendant-
Appellant.**

**No. 71–1912.**

United States Court of Appeals,
Ninth Circuit.

April 12, 1972.

---

3. 92 S.Ct. page 635.

Gary D. Weatherford (argued), George H. Lerg, II, of Ferris, Weatherford, Brennan & Lerg, San Diego, Cal., for defendant-appellant.

James W. Brannigan, Jr. (argued), Washington D. C., Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before DUNIWAY and TRASK, Circuit Judges, and BYRNE,* District Judge.

BYRNE, District Judge:

Appellant Machado was a civilian employed at the Camp Pendleton Marine Base in the "Recreational Branch of the Section of the Base Special Services." As a "Recreation Specialist", Machado was charged with "direct supervision" of the section's ticket office. In essence, it was Machado's responsibility to oversee the daily ticket sales [1] and to make an accounting thereof. According to the evidence adduced at trial, which we view in the light most favorable to the government, at some point in the performance of his assigned duties, Machado went astray.

---

* Honorable William M. Byrne, United States Senior District Judge, Central District of California, sitting by designation.

1. The ticket office served base personnel by securing discount tickets to various entertainment and athletic events as well as to various recreational facilities. Among the latter, were the following: tickets taken on consignment to Sea World, prepaid ticket books to Disneyland, beach cottage rentals and the Disneyland Vietnam Veterans program.

Illustrative of his defection from the law-abiding is the following: The amusement attraction, Sea World, which had issued, on consignment, discount tickets to the base notified Machado that due to a change in its method of selling tickets to military personnel, all proceeds along with any unsold tickets were to be returned "as soon as possible." Machado was not able to immediately comply with this request because he had diverted a substantial portion of these proceeds from the office cash register to his personal coffer. Frustrated by Machado's efforts to forestall compliance, Sea World threatened to inform the Marine Director of Base Special Services of its difficulty in securing the outstanding tickets and any proceeds to which it was entitled. Thereafter, Machado caused to be issued, by falsely representing to the custodian of the Base Recreation Fund that the money was to purchase tickets from Sea World to sell at the ticket office, a Camp Pendleton military base check made out to Sea World in the sum of $2,000.[2] At a jury trial, Machado was found guilty of making false statements to a government agency and embezzling government funds,[3] violations, respectively, of 18 U.S.C. § 1001 and 18 U.S.C.A. § 641.

Machado's defense consisted of the testimony of four former co-workers, the most significant to this appeal being that of Clyde Lovelace. On direct examination, Lovelace stated that he had known Machado for fifteen years and that during his two and one-half year period of employment at Camp Pendleton, he knew his reputation "for honesty and probity in these work areas" to be "excellent." Without objection, Lovelace stated during cross-examination that on March 14, 1968, he "probably" purchased hockey tickets from the Ticket Office and paid for them with a $10.00 check. Immediately thereafter, the government's counsel asked the following questions: "Now, with respect to your having heard about the reputation of Mr. Machado, for this period of time that you've known him, this fifteen years, have you ever heard that he did not turn in monies that he was accounted for?" Although this question was immediately objected to as being beyond the scope of direct, the court permitted Lovelace to answer that he had not "heard anything like that." Thereafter, Lovelace answered over objection that he had not heard that Machado had failed to "turn in" the ten dollar check he had given him to buy the hockey tickets.

**2.** Additionally, Machado wrote a check for $91 which Sea World had to redeposit for want of sufficient funds. Also, Machado had earlier paid Sea World $518 in cash. According to the Recreation Supervisor for the Base Special Services, Machado was not authorized to pay a ticket office obligation with a personal check or in cash. The only authorized form of payment was to submit "a check request to the Custodian's Office."

**3.** Machado did not limit his diverting of funds to the proceeds received from Sea World tickets. Marine Corps auditors discovered that 1707 Vietnam Veterans Disneyland coupons, at $1.00 each, had been sold, but that only $379 was accountable even though the log of the sale of those coupons indicated almost daily activity between February 14 and March 30, 1968. When questioned by his superiors, Machado assured them the balance was at home. Given a day to produce this money, Machado withdrew $534 from his personal savings account. In addition to this money, he submitted $123 in personal checks and checks issued by ticket office employee, Elizabeth Frost, for $7.34 (for the movie "Dr. Doolittle") and by civil service employee Clyde Lovelace for $10.00.

This audit also revealed the unexplained absence of 275 Disneyland Magic Key ticket books valued at $4.50 each. Additionally, a review of the duplicate receipts for beach cottage rentals for the period July 1, 1967, to March 21, 1968, disclosed that "there were $644 more in cash reflected on the receipts at the beach cottages than had been turned in" to the ticket office. The evidence indicated that Machado had signed receipts for beach cottage rentals during periods which he had not turned in any money allocable to that account.

On appeal, Machado contends for the first time that the questions propounded by the government's counsel were designed "to adduce hearsay evidence on the issue of [his] guilt or innocence." In his view, these "questions could have no effect other than prejudicing the jury," because a character witness was asked "whether he had heard that appellant had committed one of the offenses for which he was standing trial."

■■ As indicated, the ground upon which Machado objects to this cross-examination was not asserted at trial. Such a belated assertion falls within the settled rule that absent the presence of plain error, a basis for objection not raised at the trial level, cannot be urged for the first time in the Court of Appeals. United States v. Markham, 440 F.2d 1119 (9th Cir. 1971); United States v. Marquez, 424 F.2d 236 (2d Cir. 1970), cert. denied, 400 U.S. 828, 91 S. Ct. 56, 27 L.Ed.2d 58 (1970); Bond v. United States, 397 F.2d 162 (10th Cir. 1968), cert. denied, 393 U.S. 1035, 89 S. Ct. 652, 21 L.Ed.2d 579 (1969); Kreinbring v. United States, 216 F.2d 671 (8th Cir. 1954). Here, the only ground upon which Machado objected to Lovelace being asked whether he "had ever heard that he [Machado] did not turn in monies" for which he was accountable was that it was beyond the scope of direct examination. This contention is wholly free of any merit, for it was Machado who broached the subject of his reputation by eliciting from Lovelace that he enjoyed an "excellent" reputation for "honesty and probity." On cross-examination the government sought to determine the extent of Lovelace's knowledge of Machado's reputation by asking him about *reports* in the community that Machado had engaged in conduct which was inconsistent with his "excellent" reputation. The propriety of this question is beyond challenge. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948);

Shimon v. United States, 122 U.S.App. D.C. 152, 352 F.2d 449 (1965).

The second question which Machado contends is rife with "prejudicial hearsay" concerns the government inquiring of Lovelace whether he heard that Machado had not "turn[ed] in" the ten dollar check he had written to purchase hockey tickets. Machado's response thereto, "Objection, your Honor" was overruled and Lovelace was permitted to testify that he had "never heard any such thing."

■ Machado's non-specific objection cannot be considered because absent a showing that a defendant's rights have been substantially affected, a general objection is not sufficient to preserve an alleged error for appeal. United States v. Cook, 432 F.2d 1093 (7th Cir. 1970), cert. denied, 401 U.S. 996, 91 S.Ct. 1224, 28 L.Ed.2d 535 (1971); Dranow v. United States, 307 F.2d 545 (8th Cir. 1962); Bohol v. United States, 227 F.2d 330 (9th Cir. 1955). In this case, the specter of prejudicial error cannot be raised because the evidence adduced by the government in its case-in-chief far exceeded that necessary to meet its prosecutorial burden. The record is replete with evidence substantiating the charges brought against Machado by way of indictment. Accordingly, even if we were to hold that this portion of the government's cross-examination was improper, we would simply add this case to the legion which have come within the scope of Rule 52(a) [4] of the Federal Rules of Criminal Procedure.

The government continued its cross-examination of Lovelace by asking him if he knew that Machado once had worked at the Eleventh Naval District. After the request by Machado's counsel to approach the bench had been denied ("The District Attorney [sic] says things at his peril. You think the same as I do if that's what your anticipating."), Lovelace acknowledged that he was

---

4. Rule 52(a) of the Federal Rules of Criminal Procedure provides as follows: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

aware Machado had been employed "down there." Over objection (". . . the scope of examination is far beyond any probative value with respect to general reputation in the community."), Lovelace was asked whether he had heard that Machado had been "asked to leave this position with the Eleventh Naval District because he had been involved in some petty theft." Apparently responding to the government's open court assurance that it had "a basis for asking the question," the court permitted Lovelace to answer in the negative. Following a question relating to Lovelace's knowledge of Machado's civil service grade ("I believe he was GS–11"), Machado's attorney requested the court instruct the jury "that the question . . . does not infer any particular answer—truth of any allegation." The court responded by instructing the jury as follows: "As I once instructed you: Because a question is asked and the answer is, 'No', the facts set forth in the question have not been proved." Thereafter, the court denied Machado's motion for a mistrial.

Machado contends that under these circumstances the trial court's refusal to grant a mistrial constitutes reversible error. As he perceives these events, the questions propounded by the government were entirely improper and so tinted with prejudice that the trial court's cautionary instruction could not have sanitized the tainted consequence resulting from their asking. Although he failed to request that the jury be instructed "of the limited purpose for which the cross-examination was . . . allowed," Machado maintains that he is a victim of prejudice as a result of the trial court's failure, *sua sponte*, to so act.

In Michelson v. United States, 335 U.S. 469, 480, 69 S.Ct. 213, 221, 93 L.Ed. 168 (1948), the Supreme Court set forth guidelines for courts of review to follow in determining whether lower tribunals erred in their consideration of cross-examinations of character witnesses in criminal cases:

"Both propriety and abuse of hearsay reputation testimony, on both sides, depend on numerous and subtle considerations, difficult to detect or appraise from a cold record, and therefore rarely and only on clear showing of prejudicial abuse of discretion will Courts of Appeals disturb rulings of trial courts on this subject."

In that case, the Supreme Court held that the question asked of character witnesses relating to a previous arrest of the defendant was not improper because the district judge had taken "pains to ascertain, *out of presence of the jury,* that the target of the question was an actual event, . . . [and] that counsel was not merely taking a random shot at a reputation imprudently exposed or asking a groundless question to waft an unwarranted innuendo into the jury box." (Emphasis added) 335 U.S. at 481, 69 S.Ct. at 221. Here, the district judge short cut this "pains-taking" process by accepting the open court statement of the government's counsel that he had "a basis for asking the question." It is without dispute that such acceptance is improper. See Zaragoza-Almeida v. United States, 427 F.2d 1148 (9th Cir. 1970), where this court sustained the government's asking a defense character witness whether she had heard that the defendant had been arrested and deported to Mexico because before the propounding of this question, a conference was held at the bench and the prosecutor told the judge that the defendant had been "arrested and deported." Cf. Goodman v. United States, 273 F.2d 853 (8th Cir. 1960) where the court ruled that no error had been committed because the trial judge, upon ascertaining in chambers that the defendant had been convicted of the crime which was the subject of the question already asked a defense character witness, carefully and correctly instructed the jury as to the limited use of such cross-examination, both then and at the close of the case.

As indicated, the trial court, following Lovelace's negative response to the government's inquiry concerning Machado's alleged "involvement in some petty theft," instructed the jury that the facts set forth in the question were not to be viewed as evidence. Thereafter, in his charge to the jury, the district judge instructed the triers of fact, in pertinent part, as follows:

"Now, the defendant has introduced evidence regarding his general reputation for honesty and truthfulness. He is entitled to have such evidence placed on the scales on his behalf. Irrespective of other evidence, evidence of good character is to be considered in connection with all the other evidence in the case in determining his guilt or innocence. Such evidence is to be given such weight as under all the facts and circumstances you think it is entitled to. This evidence, when considered with all of the other evidence in the case, may, by itself, be sufficient to raise a reasonable doubt in your mind as to his guilt."

Although the trial court failed to properly determine the factual basis of the government's question relating to Machado's alleged involvement in "some petty theft," he greatly blunted the force of his error by immediately cautioning the jury as to the extent it was to consider the query. The trial judge further attenuated the harmful consequences of his error by instructing the jury that the character evidence adduced on Machado's behalf may have been sufficient to raise a reasonable doubt of guilt. Contrary to Machado's position, this instruction was not only proper, it was fully consistent with what *this* court has required of the district courts:

"As to the court's instruction that character evidence is 'to be considered by you along with all of the other evidence in the case in determining the guilt or innocence of the defendant,' this was not erroneous; and it was not necessary to charge upon this subject in the language of appellant's proffered instructions. The court ful-

ly instructed the jury on the question of reasonable doubt, clearly charging that they must acquit if, from all of the evidence including the character evidence, they had a reasonable doubt of appellant's guilt." Kasper v. United States, 225 F.2d 275, 278–279 (9th Cir. 1955).

In sum, although the question in controversy was asked sans a proper foundation, the trial court's action sharply reduced its impact upon the triers of fact. Given the nature of the evidence supporting the verdict, this mistake must be deemed "harmless error."

Affirmed.