UNITED STATES of America,
Plaintiff-Appellee,

v.

Wesley KRAUDE, M. D., Defendant-Appellant.

No. 72–1584.

United States Court of Appeals,
Ninth Circuit.

Aug. 21, 1972.

Rehearing Denied Sept. 13, 1972.

Certiorari Denied Dec. 18, 1972.
See 93 S.Ct. 684.

Morton Minikes (argued), of Gould, Magaram, Riskin, Wayne & Minikes, Los Angeles, Cal., Richard R. Rogan, of Rogan & Radding, Burbank, Cal., William L. Streitfeld, Inglewood, Cal., for appellant.

William R. Hawes, Asst. U. S. Atty. (argued), William D. Keller, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before MERRILL and KILKENNY, Circuit Judges and TAYLOR, District Judge*.

TAYLOR, District Judge:

The appellant, Wesley Kraude, a psychiatrist, has appealed from his conviction on 11 counts of a 29 count indictment for violating 18 U.S.C. § 1001.[1] Appellant was found not guilty on seven counts and 11 counts were dismissed by the Government, nine before trial, one before the case was submitted to the jury and one after trial when the jury failed to agree on that count.

A motion for a Judgment of Acquittal was made at the close of the government's case and denied. Following denial of appellant's motion for a new trial, he was sentenced to three years' imprisonment on each of the 11 counts to run concurrently. The court suspended the sentences and placed the appellant on probation for a period of five years and as one condition of probation that he must serve six months in a jail-type in-stitution. In addition, appellant was fined in the amount of $15,000.00.

Each count of the indictment alleged appellant submitted false requests for medicare payments to Occidental Life Insurance Company, which company was acting as the paying agent for the Social Security Administration.

█ Appellant's initial contention is that the term "jurisdiction", as used in 18 U.S.C. § 1001, means that the writing will be transmitted to the agency by the defendant, and that the agency will act on the information contained in the writing. It is argued that since the medicare forms were transmitted by appellant to a private carrier (Occidental Life Insurance Co.) and not directly to the Department of Health, Education and Welfare, the jurisdictional requirements of § 1001 were not met. The record reveals that the Department of Health, Education and Welfare, through the Social Security Administration, entered into a written contract with Occidental to handle the medicare forms and determine payment to doctors. In effect, Occidental was an agent of the Department of Health, Education and Welfare for this specific purpose. Furthermore, in Ebeling v. United States, 248 F.2d 429, 434 (8th Cir. 1957), in a similar situation, the court held that the transmittal did not have to be directly to the agency or department to be within the jurisdictional requirement of § 1001, so long as it had a material effect on the department or agency function. See also Kuenstler v. Occidental Life Insurance Co., 292 F.Supp. 532 (D.C.C.D.Cal. 1968). We are of the opinion that the term "jurisdiction" as used in 18 U.S.C. § 1001 covers a situation such as the one here.

---

* The Honorable Fred M. Taylor, Senior United States District Judge, District of Idaho, sitting by designation.

1. 18 U.S.C. § 1001 reads as follows: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device a ma-terial fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

Appellant's second contention is that the court committed reversible error in failing to instruct the jury as to the meaning of the term "jurisdiction". The record shows that counsel for the defendant was given an opportunity to object to the instructions prior to and after they were given to the jury and no objection was made in regard to the failure of the court to instruct the jury as to the meaning of the term "jurisdiction". Since no objection was made at the trial level, appellant is foreclosed from raising this issue for the first time on appeal. Rule 30, F.R.Cr.P.; White v. United States, 394 F.2d 49 (9th Cir. 1968).

The third contention argued by appellant is that as a matter of law the evidence was not sufficient to support the defendant's conviction. After carefully reviewing all the evidence produced at the trial, considered in a light most favorable to the government, together with the reasonable inferences which may be drawn therefrom, we are convinced that the evidence is amply sufficient to support the conviction. See Kaplan v. United States, 329 F.2d 561 (9th Cir. 1964).

Appellant further contends that the government's cross-examination of the defendant's character witness, Rachel Page, had the cumulative effect of depriving the defendant of a fair trial.[2] Appellant argues that the interrogation by the prosecution, in regard to reports or rumors of wrongful acts or misconduct engaged in by the defendant, was not done in good faith since the prosecution did not have possession of such matters when the witness was interrogated about them. The rule for determining whether a trial court has erred in its consideration of cross-examination of a character witness in a criminal case is enunciated in Michelson v. United States, 335 U.S. 469, 480, 69 S.Ct. 213, 221, 93 L.Ed. 618 (1948), wherein it states:

> "Both propriety and abuse of hearsay reputation testimony, on both sides, depend on numerous and subtle considerations, difficult to detect or appraise from a cold record, and therefore rarely and only on clear showing of prejudicial abuse of discretion will Courts of Appeals disturb rulings of trial courts on this subject."

The present record also reveals that the only objection made by defense counsel to the cross-examination of the witness was that a question asked had to do with an event occurring after the alleged commission of the offenses. Defense counsel made no objection to any of the questions on the ground that they denied the defendant a fair trial and were therefore prejudicial. In United States v. Machado, 457 F.2d 1372 (9th Cir. 1972), this court had occasion to review a similar contention to the one presented here. In *Machado* the defense counsel objected to a certain question asked by the prosecution of a defense character witness on the ground that it exceeded the scope of the direct examination. The objection was overruled and the witness answered. On appeal, the appellant raised the question of prejudice in regard to the cross-examination of the character witness, the same as appellant has done in this case. The court at page 1375 stated:

> "On appeal, Machado contends for the first time that the questions propounded by the government's counsel were designed 'to adduce hearsay evidence on the issue of [his] guilt or in-

---

2. This contention is based on the following questions asked of the witness on cross-examination by the prosecutor:
 1. "Well, had you heard before coming to court today that the defendant was suspended from Medical on March 11. 1968, for overutilization?" [R.T. 595]
 2. "Did you hear that Dr. Kraude's salary was attached by order of the Superior Court in Los Angeles County for failing to pay alimony to his wife?" [R.T. 599]
 3. "Did you know that personnel at Camarillo State Hospital wrote him a letter explaining that it was his obligation to pay that and that if he didn't that would reflect on the hospital? Did you hear that?" [R.T. 599]

nocence.' In his view, these 'questions could have no effect other than prejudicing the jury,' because a character witness was asked 'whether he had heard that appellant had committed one of the offenses for which he was standing trial.'

As indicated, the ground upon which Machado objects to this cross-examination was not asserted at trial. Such a belated assertion falls within the settled rule that absent the presence of plain error, a basis for objection not raised at the trial level, cannot be urged for the first time in the Court of Appeals."

The trial court in this case, *sua sponte,* instructed the jury concerning the limited purpose of the cross-examination of the character witness[3] and later gave an instruction in regard to character and general reputation evidence.[4] In *Machado,* supra, after determining that the trial court erred by not properly determining the factual basis of the government's question directed to the defense character witness, this court held such error to be harmless since it was followed by instructions very similar to the ones given in this case.

The final contention of appellant is that he was deprived of his constitutional guarantee to a fair and impartial trial because one of the jurors, a Mrs. Campbell, allegedly concealed the fact that she had been previously employed by the Los Angeles Office of the United States Department of Justice. Appellant contends

that Mrs. Campbell, in a telephone call to a Mr. Rogan (an attorney) on December 8, 1971, stated that she had been employed in the Los Angeles Office of the United States Department of Justice and for a number of years had been employed by the Federal Government. According to footnote 27, appearing on page 42 of Appellant's Brief, Mr. Rogan's Affidavit in Support of Appellant's Motion for New Trial was filed with the United States District Court on January 6, 1972. However, he alleges that through inadvertence, this affidavit was not made a part of the Clerk's Record on Appeal. Appellant requests that this Court take judicial notice of said Affidavit and, in particular, the portion stating that Mrs. Campbell was employed by the Justice Department.

During the voir dire examination of the jury, all members, including Juror Campbell, were asked by the court:

"Is there anyone else who is employed by the United States Government *now or has been in the recent past."* [emphasis added]

Mrs. Campbell did not respond to this question. The Court later inquired of Mrs. Campbell personally, as follows:

"THE COURT: Did you hear all the questions I asked a while ago?

VENIREMAN CAMPBELL: Yes, I did.

THE COURT: And would your answers be in the negative in all respects?

3. "THE COURT: Ladies and gentlemen, perhaps I should explain to you that this witness has testified that she knows the doctor's reputation for truth, honesty, and integrity in the area in which he works and lives.

Now in attempting to counteract that, or testing her opinion, questions of this kind may be asked. They may be based on hearsay. They are not introduced as evidence or proof that the doctor may have been expelled on some other occasion, but merely to test this witness' opinion if she had heard that, and if she had heard it, whether it might have affected her judgment in some way.

These questions must not be asked unless the Government in good faith believes

that there is such a rumor or such information abroad which this witness might have heard." [R.T. 596–597]

4. "Where a defendant has offered evidence of good character or good general reputation for truth and veracity or honesty and integrity or as a law-abiding citizen, the jury should consider such evidence along with all other evidence in the case.

Evidence of a defendant's reputation inconsistent with those traits of character ordinarily involved in the commission of a crime charged may give rise to a reasonable doubt since the jury may think it improbable that a person of such good character with respect to those traits would commit such a crime." [R.T. 998]

VENIREMAN CAMPBELL: Yes.

THE COURT: You wouldn't have any different answers?

VENIREMAN CAMPBELL: No, I would not."

 The above statements of Mrs. Campbell indicate that she was not then and had not been employed in the recent past by the United States Government. To merely assert that at some time in the past (unknown) this juror had been employed by the Federal Government is not sufficient evidence to justify a reversal of the judgment in this case. In Daut v. United States, 405 F.2d 312 (9th Cir. 1968), this Court refused to hear a claim of juror bias when there was no record below establishing the claim of bias and no actual or implied bias was shown.

We conclude that the conviction of appellant should be, and it hereby is, affirmed.