**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Seymour MATANKY, M.D., Defendant-
Appellant.**

No. 73–1190.

United States Court of Appeals,
Ninth Circuit.

July 5, 1973.

Rehearing Denied July 25, 1973.

Certiorari Denied Nov. 19, 1973.
See 94 S.Ct. 539.

Morris Lavine (argued), Los Angeles, Cal., for defendant-appellant.

Robert C. Bonner, Asst. U. S. Atty. (argued), William D. Keller, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HAMLIN and CARTER, Circuit Judges, and BOLDT, District Judge.[*]

---

[*] The Honorable George H. Boldt, United States District Judge, Western District of Washington, sitting by designation.

HAMLIN, Circuit Judge:

Seymour Matanky, M.D., appellant herein, appeals from his conviction in the United States District Court for the Central District of California on all 39 counts of an indictment for violations of 18 U.S.C. § 1001.[1] Appellant received a suspended prison sentence and fines totaling $58,500.00. We affirm.

Matanky is a medical doctor, practicing in the San Fernando Valley, Los Angeles County, California. During the period covered in the indictment (November, 1968–October, 1970), appellant had numerous patients at various San Fernando Valley convalescent hospitals. Many of his patients were over 65 and covered by the Medicare Act of 1965, 42 U.S.C. §§ 1395 et seq.

Medicare is administered by the Social Security Administration, an agency of the United States Department of Health, Education and Welfare (H.E.W.). To process and pay Medicare claims, H.E. W. has entered into contracts with certain private insurance carriers, including California Blue Shield, Occidental Life Insurance Company, and Travelers Insurance Company. See 42 U.S.C. § 1395u.

Claims made by medical doctors for services rendered to Medicare patients are submitted to the private carriers on a document entitled "Request for Medicare Payment." (Social Security Form 1490). The private carriers utilize federal funds to pay Medicare claims. *See generally*, Aquavella v. Richardson, 437 F.2d 397, 399 (2 Cir. 1971).

During the period in question, Matanky submitted thirty-nine 1490 forms to the aforementioned private insurance carriers, who were under contract with the federal government to process and pay Medicare claims. All of the 1490 forms contained appellant's representation that he had made a certain number of convalescent hospital visits to particular patients in given months. The 1490 forms further contained representations as to the particular dates of the months that the visits were made to the patients.

In April, 1972, the grand jury returned a forty-six count indictment, charging appellant with the section 1001 violations. Each count thereof alleged in essence that appellant had made or caused to be made false statements and representations in a matter "within the jurisdiction of [a] department or agency of the United States." Specifically, the indictment alleged that appellant had submitted to certain private insurance carriers, acting as government paying agents, documents entitled "Request for Medicare Payments" (form 1490), representing thereon that he had rendered certain described medical services to named patients, reimbursable under Medicare, when in fact he had not rendered such services.

Appellant was arraigned in May, 1972, pleading not guilty to each count. In June, 1972, he filed a Motion to Dismiss, upon the grounds that 42 U.S.C. § 408, proscribing false statements in an application for payment under the Social Security Act, precluded a prosecution under section 1001. The district court denied the motion. United States v. Matanky, 346 F.Supp. 116 (D.C.Cal.1972).

Prior to the trial's commencement, and upon the Government's motion, Counts thirty-three through thirty-nine of the indictment were dismissed. After a three week jury trial during October, 1972, the jury returned verdicts of guilty as to each of the thirty-nine remaining counts.

---

1. 18 U.S.C. § 1001 provides as follows:

 Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry shall be fined not more than $10,000 or imprisoned not more than five years, or both.

After the denial of the various post-trial motions, appellant filed a timely notice of appeal. Our jurisdiction is predicated upon 28 U.S.C. §§ 1291 and 1294.[2]

Appellant raises numerous issues in this appeal, none of which we find meritorious, and many of which are frivolous.

## I.

Appellant first contends that the indictment fails to state an offense against the United States. He further argues that "the language of section 1001 is sufficiently unclear and indefinite to violate due process of law." *See, e. g.,* Winters v. New Jersey, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

 In support of the first above noted contention, appellant urges that inasmuch as the 1490 forms were submitted to the private insurance carriers rather than directly to the government, they cannot be deemed to contain statements "in a matter within the jurisdiction of any department or agency of the United States," within the meaning of section 1001. A similar contention was raised and rejected by this court in United States v. Kraude, 467 F.2d 37, 38 (9 Cir.), cert. denied, 409 U.S. 1076, 93 S.Ct. 684, 34 L.Ed.2d 664 (1972), wherein the private carriers were viewed as Government paying agents for the purposes of section 1001.

 As such, we find no vagueness problems with section 1001, either as construed or as applied to this case. United States v. Kraude, *supra. See* Haddad v. United States, 349 F.2d 511, 514 (9 Cir.), cert. denied, 382 U.S. 896, 86 S.Ct. 193, 15 L.Ed.2d 153 (1965); United States v. Johnson, 284 F.Supp.

273, 278 (W.D.Mo.1968), aff'd 410 F.2d 38 (8 Cir.), cert. denied 396 U.S. 822, 90 S.Ct. 63, 24 L.Ed.2d 72 (1969); United States v. Houcks, 224 F.Supp. 778, 779–780 (W.D.Mo.1963). *See also,* United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598 (1941).

## II.

 Another contention is that appellant was denied due process of law because of the multitude of counts charged in the indictment. His reliance upon Bramblett v. United States, 97 U.S.App. D.C. 330, 231 F.2d 489, cert. denied, 350 U.S. 1015, 76 S.Ct. 658, 100 L.Ed. 874 (1956), in support of this contention is misplaced. The *Bramblett* appellant was charged in seven counts of an indictment with violating section 1001, but only one false misrepresentation was ever made or submitted. Unlike *Bramblett,* here each count was based upon a different factual misrepresentation. Different proofs of fact were required, and proved, for each misrepresentation. There was no error. United States v. Schrenzel, 462 F.2d 765, 771 (8 Cir. 1972); United States v. Eskow, 422 F.2d 1060, 1064 (2 Cir.), cert. denied, 398 U.S. 959, 90 S.Ct. 2174, 26 L.Ed.2d 544 (1970).

Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), is not in point.

## III.

Appellant's further contention is that the evidence produced at trial is insufficient to support the jury's verdicts of guilty.

We briefly summarize the relevant testimony elicited at trial, mindful that the evidence must be considered in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1943);

2. Between the times of the indictment and throughout the trial, appellant was represented by James P. Cantillion. In November, 1972, Morris Lavine became appellant's attorney of record. Mr. Lavine has been responsible for the prosecution of this appeal.

United States v. Baxter (9 Cir., February 16, 1973, No. 71–2082) (slip opinion at 3).

Testimony at trial was received from appellant's former convalescent hospital patients, and from nursing personnel at the various facilities. The testimony of the former patients concerning the frequency of visits to them by appellant severely contradicted his own claims. For instance, while appellant claimed to have visited certain patients two or more times per week, these same patients testified that the visits occurred at a frequency of once or twice per month. Testimony by the nursing personnel corroborated the testimony of the patients.

The record indicates that certain patients were absent from particular hospitals on dates appellant allegedly visited them.

Circumstantial evidence produced at trial established that appellant had a busy private office practice, and that he was not absent from that office for the substantial periods of time which would have been necessary to have made all the visits alleged on the 1490 forms. Further, the Government indicated at trial that appellant changed his billing practices after an investigation of his practices was commenced in October, 1970.

We have carefully reviewed the record in this case. We are convinced that there is substantial evidence supporting the jury verdicts. It was for the jury to weigh any conflicting testimony. In attempting to retry his case here, appellant misconstrues the function of an appellate tribunal.

## IV.

■ Appellant also contends that he was denied a fair trial because he was referred to by the prosecutor at trial as the "man with the beard." This contention is untenable. The record indicates that reference to appellant's plumage was solely for ease of identification. There was no prejudice. *Cf.* Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973); *id.*, at 529–

530, 93 S.Ct. at 851–852 (Douglas, J., dissenting and concurring).

## V.

Appellant next contends that the district court erred in permitting testimony relating to the "quality of care" as rendered by appellant to his patients. This assignment of error is based upon the testimony of Dr. Lowell Ford, an expert witness called by the Government.

■ Our review of the record indicates that Dr. Ford testified as to the meaning of certain codes used by medical doctors in noting particular treatments administered to particular patients. His testimony did not relate to appellant's "quality of care." We see nothing prejudicial in this testimony.

But even assuming *arguendo* that there was some testimony regarding "quality of care," admissibility thereof must be weighed in relation to its relevance. This is an area wherein the trial judge has traditionally enjoyed a wide discretion. United States v. Campbell, 466 F.2d 529, 530–531 (9 Cir. 1972).

## VI.

Another contention is that allegedly prejudicial pretrial publicity resulted in an unfair trial.

■ The morning of the day the grand jury returned the indictment against appellant, April 5, 1972, there appeared in the Los Angeles *Times* an article concerning the Government charges against appellant. Appellant contends that this one article prejudiced the trial conducted six months later. There was, however, no showing that any members of the trial jury read or were aware of the newspaper article. United States v. Orand (9 Cir. March 6, 1973), No. 72–2064 (slip opinion at 4). *Cf.* Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

■ To the extent appellant claims prejudicial impact upon the grand jury which returned the indictment, we are referred to no authority indicating that

prejudicial pre-trial publicity, assuming the existence thereof here, may void a grand jury indictment.

## VII.

Appellant further assigns error to a statement made by the prosecution in its closing argument to the jury to the effect that the instant case involved $60,000–$70,000 in false billings. Appellant notes that only $2,156.60 was involved.

The objected-to statement was offered apparently in response to a defense statement belittling the amount involved in one of the counts. Further, documents introduced into evidence could be seen as permitting certain inferences, including the sum quoted by the prosecution.[3] We again deal with an area traditionally shunned by appellate courts, and we are unable to conclude that the trial judge abused his discretion in permitting the above statement. United States v. Roth, 466 F.2d 1111, 1113 (9 Cir. 1972); United States v. Cotter, 425 F.2d 450, 452 (1 Cir. 1970).

Further, in light of the overall posture of the Government's case, any possible prejudice would have been harmless error. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Rule 52(a), F.R.Crim.P.

## VIII.

Appellant's contention regarding jury instructions given, and refused, by the trial court are without merit. As to those instructions, given or omitted, not objected to at trial, appellant cannot raise objections thereto for the first time on appeal. United States v. Liantaud, 466 F.2d 1342, 1343 (9 Cir. 1972); Rule 30, F.R.Crim.P. Further, we find no error in the trial court's proffered instructions, nor in its refusal to give those offered by appellant. Cf. United States v. Bagby, 451 F.2d 920, 927 (9 Cir. 1971); United States v. Harvey, 428 F.2d 782, 783, n. 1 (9 Cir. 1970).[4]

## IX.

Appellant's contention that the district court erroneously permitted certain allegedly incompetent witnesses to testify is likewise without merit.

Appellant on appeal urges that Mrs. Gunderson, a Government witness and former patient of the appellant, was insane at the time of her testimony. The record does not support this contention. The record shows only that there was testimony that on admission to the hospital, her diagnosis was "schizophrenia," and that she had previously been a patient at Camarillo State Hospital. Appellant was aware of these facts, and made no objection at trial to her competency as a witness.[5] There was no Brady[6] deception practiced by the prosecution. Cf. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Mrs. Gunderson's credibility was a matter for the jury to determine. Shibley v. United States, 237 F.2d 327, 334 (9 Cir.), cert. denied, 352 U.S. 873, 77 S.Ct. 94, 1 L.Ed.2d 77 (1956).

Appellant further asserts that the district court improperly permitted another Government witness, Robert Lane, to testify. Appellant urges that Lane, another of appellant's former pa-

---

3. From the 1490 forms in evidence, there was evidence from which it might be inferred that until October, 1970, the appellant billed as if he had seen all of his Medicare patients on an average of eight times per month. The appellant billed Medicare for $16.00 per visit, which would equal $180.00 per month average per patient. With an average of only 50 patients the billings would come to $76,800.00 a year.

4. The trial court's failure to include the concept of "bad purpose or evil intent" in its charge regarding "willful." as required in criminal tax prosecutions. Bishop v. United States, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973), to which no objection was made, is not here plain error requiring reversal. Cf. Bloch v. United States, 221 F.2d 786, 788 (9 Cir. 1955).

5. Appellant's reliance upon District of Columbia v. Armes, 107 U.S. 519, 2 S.Ct. 840, 27 L.Ed. 618 (1882), is misplaced.

6. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

tients, was a victim of alcoholic and mental problems. Nothing in the record indicates that Lane was insane at the time of his testimony. His medical records were admitted into evidence. Again, his credibility was a matter for the jury to determine. *See* Shibley v. United States, *supra*.

## X.

Finally, appellant contends that he was denied effective assistance of counsel at trial. We disagree, as did the trial judge who, at the conclusion of trial, stated that Mr. Cantillion, the defense counsel, "gave a fine representation" of appellant. R.T. 1435.

"Our careful perusal of the entire record convinces us that appellant was convicted not by reason of incompetent or inadequate representation by counsel, but by reason of the overwhelming weight of the evidence produced against him." United States v. Valenzuela-Mendoza, 452 F.2d 773, 774 (9 Cir. 1971).

## XI.

Other appellate contentions, not detailed above, have been carefully reviewed, and found to be similarly without merit.

Affirmed.