**UNITED STATES of America, Plaintiff,**

v.

**James R. BROWN and Carol Herklotz, Defendants.**

**No. 80–CR–43.**

United States District Court, W. D. Wisconsin.

Jan. 2, 1981.

Memorandum Jan. 30, 1981.

Judith M. Hawley, Asst. U. S. Atty., Madison, Wis., for plaintiff.

David J. Ghilardi, Charles Giesen, Eisenberg, Giesen, Ewers & Hayes, Madison, Wis., for defendants.

## ORDER

CRABB, Chief Judge.

The parties have filed no objections to the Report and Recommendation entered herein by the Honorable William L. Gansner, United States Magistrate. In the absence of any objections, there is no need for me to review the merits of the magistrate's proposed findings of fact and conclusions of law. However, I have made an independent review of the Report and Recommendation.

I find the magistrate's proposed findings and conclusions well-founded and unexceptionable. Accordingly, I adopt as the court's own the proposed findings of fact of the magistrate and the proposed conclusions of law.

IT IS ORDERED that the defendants' motions to dismiss the indictment on the ground of allegedly prejudicial representations made to the Grand Jury is DENIED; defendants' motion for dismissal of the in-

dictment for election of charges by the government on the ground that the indictment charges both conspiracy and substantive offenses is DENIED; defendants' motion to dismiss Count I on the grounds that it charges a dual-objective conspiracy and that it is insufficient is DENIED; defendants' motion to dismiss Count II for insufficiency is DENIED; defendants' motion to dismiss Counts III through VIII is DENIED; defendants' motion to dismiss Count II for duplicity is DENIED; and defendants' motion to dismiss Counts III through VIII as to require election, on the ground of multiplicity is DENIED.

## REPORT AND RECOMMENDATION

### Dec. 9, 1980.

WILLIAM L. GANSNER, United States Magistrate.

### INTRODUCTION

This report and recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(B), and addresses various dismissal motions filed by the defendants.

Conspiracy and substantive offenses are at issue in this case. Count I jointly charges the defendants with conspiracy to violate 18 U.S.C. §§ 665 and 1001, respectively, by embezzling and misapplying property under the Comprehensive Employment and Training Act (CETA), and by causing false written statements to be made in matters within the jurisdiction of an agency of the United States. Count II jointly charges the defendants with the substantive offense of embezzling and misapplying CETA property; namely, the services of trainees participating in the Western Dairyland Supported Work Program. It is alleged that defendant Brown was the director and defendant Herklotz the personnel coordinator of this CETA-funded work experience program. Each defendant is individually charged with three substantive counts of causing a false written statement to be made (defendant Herklotz in Counts III, IV, and V, and defendant Brown in Counts VI, VII, and VIII). The false statements alleged in these counts involve the preparation of weekly time sheets on which the work sites of six different trainees were falsified. Specifically, it is alleged that the time sheets represented that the trainees had worked at an approved work project, while in fact each had worked at an unapproved work site that was privately owned by defendant Herklotz and her husband and leased by them to the Cataract Corporation, a private profit-making corporation of which Brown, Herklotz and her husband were all officers.

Each defendant filed several dismissal motions in this case, and each defendant was subsequently granted leave to join in and rely upon the other's motions. Construing all motions as having been asserted by both defendants, therefore, the following dismissal motions are before the court:

1. Motion to dismiss the indictment on the ground of pre-indictment prosecutorial delay;

2. Motion to dismiss the indictment on the ground that prejudicial non-evidentiary representations were made to the Grand Jury by a government agent;

3. Motion to dismiss all counts, or require government election between the conspiracy and substantive counts, on the ground that the indictment improperly charges the defendants with both conspiracy and underlying substantive offenses;

4. Motion to dismiss Count I on the ground of its improper charging of two conspiratorial objectives;

5. Motion to dismiss Counts I and II on the ground of insufficiency;

6. Motion to dismiss the false statement counts (Counts III—VIII) on the ground of failure to allege a matter within the jurisdiction of a department of the United States as required by 18 U.S.C. § 1001.

7. Motion to dismiss Count II on the ground of duplicity; and

8. Motion to dismiss the false statement counts (Counts III—VIII), or require

government election of one count as to each defendant, on the ground of multiplicity.

Such facts as are necessary to a consideration of these motions are incorporated within the appropriate section of the following opinion.

## OPINION

### 1. *Pre-indictment Delay*

Defendants have moved to dismiss the indictment in this case on the ground of delay between the commission of their alleged offenses and the return of the indictment. Defendant Brown, who brought the motion, argues that his right to a fair trial has been prejudiced by this passage of time and that the delay was unnecessary. Defendant Herklotz, who joined in the motion after its filing, has presented no argument or allegation in its support. The government's briefs in opposition to the defense motions in this case do not address this motion at all.[1]

The offenses in this action are alleged to have been committed between the dates of September 1, 1978 and April 23, 1979. It appears that a grand jury investigation was underway as early as late March of 1979,[2] but it is clear that an indictment was not returned until July 29, 1980. There was a period of approximately 15 months, therefore, between the last date of an alleged offense and the bringing of charges.

As noted above, defendant Herklotz has advanced no allegation, suggestion or argument of any prejudice accruing to her from the pre-indictment delay. Neither Brown nor his counsel have submitted an affidavit in this regard. Brown's only representations of delay-caused prejudice are set forth in the following four sentences of argument from his counsel's brief:

1.  I draw no substantive inference of any kind from the government's silence on this matter. Even if the government had explicitly stated a lack of opposition to the motion, the defendants would still be required to demonstrate their legal entitlement to the relief sought.

2.  Attached to defendant Brown's brief in support of the instant motion is a copy of a sub-

[I]t is clear that the Indictment against the defendant, James R. Brown, should be dismissed. There is little question that defendant's due process right to a fair trial has been prejudiced by the thirteen-month delay by the Government in presenting its evidence to the Grand Jury. The passage of time, as pointed out by the Court in *Dickey*, supra, makes it more difficult for defendant to reconstruct events of the past in his own memory. The memories of witnesses who could rebut the allegation that they were used to work on unauthorized work sites will have undoubtedly faded, if such witnesses are still available at all.

The government has offered no factual explanation of the cause or need for the 15 month pre-indictment delay in this case.

The constitutional significance of lengthy pre-indictment delay has been considered by the United States Supreme Court in two leading cases, *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) and *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). From them, the following "settled principles," *Id.* at 797, 97 S.Ct. at 2052, have emerged: (1) while statutes of limitations provide the primary guarantee against the bringing of stale criminal charges, the Due Process clause plays a limited role in protecting against oppressive delays; (2) proof of actual prejudice resulting from pre-indictment delay is a pre-requisite to adjudication of a due process claim but is not by itself sufficient to establish the validity of the claim; (3) once actual prejudice is proved, the judicial focus must then turn to the reasons for the delay; and (4) a due process claim grounded upon pre-indictment delay will be successful only where proof of actual prejudice is coupled with proof of an unnecessary delay.

poena issued on March 30, 1979, directing Brown to appear before the grand jury on April 10, 1979, and to produce certain identified documents at that time. FBI memoranda that have been submitted to the court by the government show that both defendants were interviewed by an FBI agent as early as March 29, 1979.

Under *Marion* and *Lovasco*, therefore, a due process claim based upon pre-indictment delay requires a balancing or comparison of the extent of actual prejudice and the reasons for delay. It is clear, however, that "[t]he due process calculus is not even brought into play until actual prejudice is shown." *Arnold v. McCarthy*, 566 F.2d 1377, 1383–84, n.1 (9th Cir. 1978); *accord, United States v. King*, 593 F.2d 269, 271 (7th Cir. 1979).

█ Complete and detailed consideration of defendants' due process claim is unnecessary, for they have failed to demonstrate or even allege any specific actual prejudice arising from the 15-month pre-indictment delay in this case. Their claim is simply not "concrete and ripe for adjudication." *Lovasco*, 431 U.S. at 789, 97 S.Ct. at 2048.

Herklotz has pointed to no prejudice of any kind resulting from the pre-charging delay; the present motion should obviously be denied as to her. Neither Brown nor his counsel have advanced any affidavit in this regard. Instead, Brown relies upon the arguments of his counsel that the delay has made it "more difficult for [him] to reconstruct events of the past in his own memory," and that the memories of witnesses may have faded, "if such witnesses are available at all." These "arguments" must be considered as such, and are entitled to no factual weight. Had they been presented by affidavit, however, such allegations would remain indefinite, speculative, and premature. There is no allegation that delay has impaired the memory of Brown or any witness as to events material to his defense; nor is there any allegation that the passage of time has resulted in the loss of any useful witness.

█ Proof of actual prejudice is a prerequisite to consideration of a due process claim grounded upon pre-indictment delay.

**3.** Where specific actual prejudice from pre-charging delay is alleged, it is appropriate that an evidentiary hearing be conducted to elicit proof of, first, the extent of the prejudice and, second, the reasons for the delay. *King*, 593 F.2d at 271. Neither defendant requested such a hearing. In view of Brown's insubstantial argument of indefinite prejudice, it is my view that no hearing was necessary in this case.

Defendants have failed to even allege actual prejudice, and it would be improper for the court to presume its presence. *United States v. King*, 593 F.2d 269 (7th Cir. 1979).[3] In the absence of any allegation of actual prejudice, it is immaterial that the government has offered no explanation for the delay in this case.

It will be my recommendation that defendants' motion to dismiss the indictment for pre-charging delay be denied.

### 2. *Prejudicial Non-evidentiary Representations to the Grand Jury*

Defendants have moved for dismissal of the indictment on the ground that allegedly prejudicial and non-evidentiary remarks were included in the testimony of an FBI agent before the grand jury that returned the indictment in this case.

In his July 29, 1980 appearance before the grand jury, FBI Special Agent Charles G. Southworth testified extensively as to the findings of his investigation of the defendants' suspected private use of CETA-paid trainees participating in the Western Dairyland Supported Work Program. At the conclusion of a long narrative portion of his testimony, Agent Southworth made the following statements, which are the subject of the present motion:

In addition, it got really kind of silly there because Brown was using the services of the secretaries and the office personnel to conduct his Cataract Corporation business; have them type letters, using Cataract Corporation stationery, making telephone calls on the taxpayers' expense in behalf of Cataract Corporation, using the vehicles, the gas. And he just literally was running the Cataract Corporation right out of the offices that you and I were all paying for.[4]

**4.** The transcript of Southworth's grand jury testimony was provided to defendants pursuant to the stipulated discovery order in this case. A copy of the transcript was submitted to the court as an attachment to government counsel's affidavit in response to defendants' motions.

From the transcript of Southworth's grand jury testimony, it is clear that this statement refers to defendant Brown's use of secretaries and other personnel in the office of the Western Dairyland Work Program. The Cataract Corporation is described in the indictment as a private profit-making corporation of which the defendants were officers. The gravamen of the indictment, of course, is that defendants used CETA-paid trainees for the benefit of the Cataract Corporation.

■ It is my assessment that the excerpted statement from Agent Southworth's testimony could have had little prejudicial effect, if any, upon the Grand Jury. With the possible exception of the gratuitous term "silly," the first sentence of the statement appears to be an unobjectionable description of one aspect of the agent's investigative findings. The matters recited in that sentence conceivably could have led to additional charges against the defendants, and they were certainly within the purview of the grand jury's investigation. The reference in the last sentence of the statement to the taxpayer status of the agent and the grand jurors was surely an improper comment. I doubt, however, that the remark could have produced any significant prejudicial impact upon the Grand Jury, for it was a single phrase in a lengthy recitation of facts revealing a pattern of misuse of public funds. There is no reason to believe that this isolated and unnecessary comment was so inflammatory as to have produced an indictment based upon the biases of the grand jurors. *See United States v. Cathey,* 591 F.2d 268, 273–74 (5th Cir. 1979).

■ Finally, it is my opinion that the nature of the excerpted statement, and the likelihood that all or part of it would be inadmissible at trial, are largely immaterial to the question of the indictment's validity. The rules of evidence applicable to the courtroom impose no constraint upon a grand jury. Once a facially valid indictment has been returned, it is not subject to dismissal by challenge to "the character of the evidence" considered by the grand jury. *United States v. Calandra,* 414 U.S. 338, 344–45, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974) (holding that grand jury may consider evidence obtained in an unlawful search or seizure); *cf. Lawn v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958) (indictment may be based upon information obtained in violation of defendant's privilege against self-incrimination); *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (indictment may be based solely upon hearsay).

For these reasons, it will be my recommendation that defendants' motion to dismiss the indictment on the ground of the challenged testimony of Agent Southworth be denied.

### 3. *Charging of Both Conspiracy and Substantive Counts*

Defendants have moved for dismissal of the indictment on the ground that it charges them with both a conspiracy and substantive offenses that were the object of the conspiracy. Alternatively, defendants seek an order requiring the government to elect between prosecution of the conspiracy or the substantive crimes. There appear to be two aspects to the motion: 1) a general claim that the combined charging of both the conspiracy and the several substantive offenses violates double jeopardy; and 2) a more specific claim that the combined charging of the conspiracy and the particular false statement offenses is impermissible under Wharton's Rule. It is my view that neither claim requires the granting of the motion.

■ Defendants' first claim is foreclosed by *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), where it was held that double jeopardy does not bar joint prosecution, conviction and sentencing for both a conspiracy to violate, and the actual violation, of the same statute. The distinctiveness of these crimes is "a postulate" of American law, *Callanan v. United States,* 364 U.S. 587, 597, 81 S.Ct. 321, 327, 5

L.Ed.2d 312 (1961), and it is now firmly-established that, except in rare circumstances not present in this case, "the conspiracy to commit an offense and the subsequent commission of that crime . . . do not merge into a single punishable act." *Iannelli v. United States*, 420 U.S. 770, 778, 95 S.Ct. 1284, 1290, 43 L.Ed.2d 616 (1976) (citing *Pinkerton*, 328 U.S. at 643, 66 S.Ct. at 1181). Thus, the combined charging in this case of both a conspiracy to violate 18 U.S.C. §§ 665 and 1001 and the actual violation of those statutes is not precluded by the Double Jeopardy clause of the Fifth Amendment.

Defendants' second claim is that the joint charging of both a conspiracy to violate 18 U.S.C. § 1001 (alleged as to both of them in Count I) and several substantive offenses of causing false statements to be made in violation of that statute (alleged as to Herklotz in Counts III—V, and as to Brown in Counts VI—VIII), is prohibited by Wharton's Rule because the conspiracy and substantive offenses are crimes that required their mutual concerted activity. The defect in this claim is that it misapplies Wharton's Rule and misreads the charges in this case.

■ Wharton's Rule is an exception to the general principle, discussed above, that a conspiracy and the substantive crime that is the object of the conspiracy are separate and distinct crimes. *Iannelli v. United States*, 420 U.S. at 779, 95 S.Ct. at 1290. The Rule is named for Francis Wharton, in whose criminal law treatise it was formulated and explicated. As stated in the most current treatise edition, it simply provides:

> An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission.

1 R. Anderson, *Wharton's Criminal Law and Procedure* § 89, p. 191 (1957). Put even more simply, the Rule provides that it is not a crime for two people to conspire to commit a crime that necessarily involved their joint participation. Where it is applicable, the Rule requires either that the conspiracy charge be dismissed before trial or that trial proceed on both charges with the jury instructed that conviction for the substantive offense precludes conviction for the conspiracy. *Iannelli*, 420 U.S. at 774–75, 95 S.Ct. at 1288.[5]

There are at least two reasons, however, why Wharton's Rule cannot be invoked in this case.

■ First, as the Supreme Court has interpreted it, the Rule applies only where the "parties to the [conspiracy] are the only persons who participate in commission of the substantive offense, and the immediate consequences of the crime rest on the parties themselves rather than on society at large." *Id.* at 782–83, 95 S.Ct. at 1292. The crime-party identity that is contemplated by the Rule is absent in the charges in this case. The defendants are, of course, jointly charged with conspiring to violate § 1001, but they are individually charged with distinct substantive violations of the statute. That is, each defendant is individually charged in separate counts with causing another person—not alleged to be a member of the conspiracy—to make three different false statements. Moreover, the substantive offense at issue is not a crime, like adultery or even bribery, where the immediate consequences rest on the parties alone. The most immediate consequence of the making of false statements in matters within the jurisdiction of the United States, presumably, is the defrauding of the government and society at large.

■ Second, "Wharton's Rule applies only to offenses that *require* concerted criminal activity, a plurality of criminal agents. In such cases, a closer relationship exists between the conspiracy and the substantive offense because both *require* collective criminal activity." *Iannelli*, 420 U.S. at 785, 95 S.Ct. at 1293 (original emphasis).

---

**5.** Classic instances of the Rule's applicability are cases involving dueling, bigamy, adultery, incest, the buying and selling of contraband goods, and the giving and receiving of bribes. LaFave and Scott, *Criminal Law* § 62, p. 492 (West Publ. Co. 1972).

This limitation is clearly recognized in Wharton's treatise itself. 1 *Wharton's Criminal Law and Procedure,* at 192 ("This rule does not apply when the offense could be committed by one of the conspirators alone"). The making of a false statement in violation of § 1001 does not require concerted activity. The crime can obviously be committed by a single person. The defendants are individually charged in this case under 18 U.S.C. § 2 with causing another person to make false statements, but the concert of action alleged involves a single defendant and a non-conspirator who cannot claim protection under Wharton's Rule. The presence of a § 2 allegation does not transform § 1001 into an offense requiring multiple actors.

It will be my recommendation that defendants' motion to dismiss the indictment in this respect be denied.

### 4. Dual-Objective Conspiracy In Count I

Defendants have moved for dismissal of Count I, which charges them with a conspiracy to violate both § 665 and § 1001, Title 18, United States Code. They contend that the dual-objective conspiracy count may result in their being convicted at trial either upon a less-than-unanimous verdict or by a prejudicial transference of guilt, as described in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), in the event that two separate conspiracies are established by the evidence at trial. Neither defendant submitted a brief in support of this motion. My own research and review of relevant legal authority, aided to some extent by the government's arguments in brief, have persuaded me that there is no merit to the motion.

Count I's allegation that defendants conspired to violate two federal statutes is entirely consistent with long-standing authority approving the charging of multiple criminal objectives in a single conspiracy count. *Braverman v. United States,* 317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942); *Frohwerk v. United States,* 249 U.S. 204, 209–210, 39 S.Ct. 249, 251–252, 63 L.Ed. 561 (1919); *United States v. Rabinowich,* 238 U.S. 78, 86, 35 S.Ct. 682, 684, 59 L.Ed. 1211 (1915). These cases explicitly hold that a multiple-objective conspiracy count is not subject to attack on the ground of duplicity. In the absence of a misjoinder claim under Rule 8(b), F.R.Cr.P., which would be as frivolous as a duplicity challenge in this case, the form of Count I provides no basis whatsoever for seeking its dismissal.

The concerns expressed by defendants over this count involve matters that can only be addressed if and when they arise at trial. Defendants' right to a unanimous jury verdict on the count can be protected with an appropriate jury instruction, as is usually the case with a conjunctive criminal pleading. In the event that the government's trial evidence raises the possibility of the jury finding two conspiracies—rather than the single conspiracy alleged in Count I—the court can deal with the variance problem by the giving of appropriate multiple conspiracy instructions. See *United States v. Varelli,* 407 F.2d 735, 744–48 (7th Cir. 1969); *United States v. Papia,* 560 F.2d 827, 838–40 (7th Cir. 1977).

*Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 557 (1946), the sole case advanced by defendants in support of their motion, provides no basis for the proposition that the conspiracy count in this action should be dismissed.[6]

---

**6.** In *Kotteakos,* the Supreme Court reversed the conspiracy convictions of several defendants where an indictment had charged a single conspiracy but the trial evidence had proved at least 8 different conspiracies by separate groups of defendants. The conspiracies had no connection with each other except the common participation of one individual. The trial judge had instructed the jury that only one conspiracy was charged and that the acts and statements of any one conspirator were binding as to all. Under these unusual circumstances, the Court held that the possibility of "transference of guilt from one defendant to another across the line separating conspiracies" was so great as to mandate reversal. 328 U.S. at 774, 66 S.Ct. at 1252.

*Kotteakos* is far removed from the present case. It has been described as a case involving not variance in proof so much as improper

It will therefore be my recommendation that defendants' motion to dismiss Count I on the ground that it charges a dual-objective conspiracy be denied.

### 5. Alleged Insufficiency of Counts I & II

Defendants have moved for dismissal of Count II, in which they are jointly charged with the substantive offense of embezzling and misapplying CETA property in violation of 18 U.S.C. § 665. They contend that the count is legally insufficient in the following respects: (1) that it fails to expressly allege that they "converted" the property to their own use; and (2) that it fails to expressly allege that they acted with the

joinder; i. e., multiple conspiracies so distinct and separate that, had they been charged in a single indictment, severance or election on the ground of misjoinder would have been compelled. 8 *Moore's Federal Practice—Criminal Rules* § 8.06(4), p. 8–43 (June 1980 revision). If there is variance in proof in the present case, the most that can likely be expected is the showing of two related conspiracies involving the same two defendants. The joinder of the offenses and defendants in a single indictment would undoubtedly be appropriate under Rule 8, F.R.Cr.P.

Under these circumstances, as opposed to the extreme situation in *Kotteakos*, the Seventh Circuit's view is that proper multiple-conspiracy cautionary instructions should be sufficient to protect the defendants' fair trial interests. See *Varelli and Papia*, cited above.

7. Count II reads as follows:

1. At all times material to this Count, JAMES R. BROWN was Director and CAROL HERKLOTZ was Personnel Coordinator of the Western Dairyland Supported Work Program, a work experience program for ex-offenders, recovering alcoholics and recipients of Aid to Families with Dependent Children.

2. At all times material to this Count, the Western Dairyland Supported Work Program was managed by the Western Dairyland Economic Opportunity Council, Inc., a private non-profit corporation which pursuant to a contract and grant of assistance receives financial assistance under the Comprehensive Employment and Training Act of 1973.

3. At all times material to this Count, the trainees participating in the Western Dairyland Supported Work Program were paid for their participation with Comprehensive Employment and Training Act of 1973 funds.

4. From on or about February 1, 1979 through on or about March 30, 1979, in the

appropriate felonious intent.[7] Defendants have also moved for dismissal of Count I, in which they are jointly charged with a conspiracy to violate the offense substantively charged in Count II.[8]

Rule 7(c)(1), F.R.Cr.P., requires that an indictment "be a plain, concise and definite written statement of the essential facts constituting the offense charged." To be legally sufficient, an indictment must satisfy two constitutional concerns: 1) fairly inform the defendant of the charges against which he or she must defend; and 2) be precise enough to provide protection against future jeopardy. *United States v. Ray*, 514 F.2d 418, 422 (7th Cir.), cert. de-

Western District of Wisconsin, JAMES R. BROWN and CAROL HERKLOTZ did knowingly and willfully embezzle and misapply property which was the subject of said contract and which came into their care by reason of their positions with the Western Dairyland Supported Work Program, namely: the services of trainees participating in this program with a value of approximately $1,477.

All in violation of Title 18, United States Code, Section 665.

8. Count I charges a dual-objective conspiracy, of course, and alleges that defendants also conspired to commit the substantive offenses charged in Counts III–VIII. Count I is three-and-one-half pages long and, for that reason, is not set out here in full. Its first paragraph, however, reads as follows:

1. From on or about September 1, 1978 to on or about April 23, 1979 in the Western District of Wisconsin and elsewhere, the defendants, JAMES R. BROWN and CAROL HERKLOTZ, did unlawfully and knowingly conspire and agree together and with each other to commit offenses against the United States, specifically: (1) to violate Section 665 of Title 18, United States Code, by knowingly and willfully embezzling and misapplying property which was the subject of a contract and grant of assistance under the Comprehensive Employment and Training Act, and (2) to violate Section 1001 of Title 18, United States Code, by knowingly and willfully making and causing to be made false statements in matters within the jurisdiction of an agency or department of the United States.

For the reasons described in the body of this opinion, it is my view that the entirety of Count I should be considered in determining its sufficiency, as well as the sufficiency of Count II.

*nied*, 423 U.S. 892, 98 S.Ct. 189, 46 L.Ed.2d 123 (1975). As long as the words of the statute involved clearly set forth all of an offense's constituent elements, it is generally sufficient that an indictment be stated in the words of the statute itself. *Hamling v. United States*, 418 U.S. 87, 117–118, 94 S.Ct. 2887, 2907–2908, 41 L.Ed.2d 590 (1974).

Count II of the present indictment basically tracks the wording of § 665(a). In my view, it contains a legally sufficient recitation of the elements necessary for conviction under § 665 within this circuit:

> To obtain a conviction under § 665 the government must prove two elements:
>
> (1) that the accused was an officer, director, agent or employee of, or connected in any capacity with an agency receiving financial assistance under CETA;
>
> (2) that the accused embezzled, willfully misapplied, stole, or obtained by fraud "moneys, funds, assets, or property which are the subject of a grant or contract of assistance."

*United States v. Coleman*, 590 F.2d 228, 230 (7th Cir. 1978), *cert. denied*, 440 U.S. 980, 99 S.Ct. 1786, 60 L.Ed.2d 239 (1979).

▅▅▅▅ Count II need not have expressly alleged that defendants' charged acts constituted a "conversion" of the CETA property. "Embezzle" and "misapply" are terms of established legal meaning which include within them the notion of "conversion" of another's property.[9] An indictment allegation of "embezzlement" is therefore sufficient to inform a defendant that he or she is charged with having converted to his or her own use money or property belonging to another person. *United States v. Orbiz*, 366 F.Supp. 624, 627 (D.P.R. 1973).[10] I think it is also the case that use of the word "misapply" in an indictment denotes the conversion of another's money or property to the use of the defendant or a third party.

Moreover, while an intent to injure or defraud is the requisite mental state for the crimes of embezzlement and misapplication,[11] Count II need not have alleged that element by using that precise form of words. The allegation that defendants' acts of embezzlement and misapplication were performed "willfully" is sufficient.[12]

▅▅▅▅ Defendants seek dismissal of Count I as well, arguing that the conspiracy count is legally deficient because it does not allege all of the required elements of a substantive violation of § 665. This claim is without merit. All of the requisite elements of embezzlement and misapplication, as discussed above, are in fact set forth in considerable detail in the 21-paragraph conspiracy count in this case. This detail was more than was necessary, for it is not re-

**9.** *E. g., United States v. Williams*, 478 F.2d 369, 373 (4th Cir. 1973), (as used in bank embezzlement statute, 18 U.S.C. § 656, embezzlement includes element that "the money or property embezzled be converted to the embezzler's own use"); *United States v. Duncan*, 598 F.2d 839, 858–59 (4th Cir. 1979) ("settled meaning" of misapplication, as used in § 656, is "conversion of bank funds to the use of the defendant or a third party").

**10.** In concluding that the indictment's use of the word "embezzle" necessarily implies the element of conversion, I agree with the holding of *United States v. Overbay*, 444 F.Supp. 259, 261 (E.D.Tenn.1977), that "[c]onversion to a defendant's own use is an essential element of the federal crime of embezzlement [under 18 U.S.C. § 665]." If it is to obtain a conviction on the embezzlement charge at trial, the government will have to prove this element. I disagree, however, with the dictum in *Overbay*, which defendants rely upon, suggesting that conversion must be alleged expressly in an indictment charging violation of § 665. *Id.* at 262.

**11.** *E. g., United States v. Caldwell*, 544 F.2d 691, 697 (4th Cir. 1976); *United States v. Tokoph*, 514 F.2d 597, 603–04 (10th Cir. 1975); *United States v. Docherty*, 468 F.2d 989, 993–95 (2d Cir. 1972) [all discussing embezzlement and misapplication of bank funds, in violation of 18 U.S.C. § 656].

**12.** *E. g. Ramirez v. United States*, 318 F.2d 155, 158 (9th Cir. 1963). Indeed, Count II's use of the adverb "willfully" in combination with "embezzle" was undoubtedly redundant in this respect. The Seventh Circuit's view is that "embezzle" embraces the element of willfulness, and therefore connotes to lawyers and laymen alike that the charged act "was performed with wrongful intent." *United States v. Willis*, 515 F.2d 798, 800 (7th Cir. 1975).

quired that a conspiracy count allege all of the elements of the substantive offense that is the object of the conspiracy. *United States v. Wander*, 601 F.2d 1251, 1259–60 (3d Cir. 1979). It is sufficient that a conspiracy charge clearly identify the offense that a defendant conspired to violate. *United States v. Kahn*, 381 F.2d 824, 829 (7th Cir. 1967). Count II in this case obviously does so.

Counts I and II are detailed and precise enough to satisfy the constitutional tests for indictment sufficiency. Whether read alone or in combination,[13] they fully inform the defendants of the elements of the charged offenses and provide plentiful protection against future jeopardy. For these reasons, it will be my recommendation that the court deny defendants' motion to dismiss Counts I and II on the ground of insufficiency.

### 6. *Jurisdictional Allegations in Counts III—VIII*

Defendant Herklotz, as to Counts III—V, and defendant Brown, as to Counts VI—VIII, have moved for dismissal of the false statement counts in this case on the ground that the alleged statements were not made in a matter within the jurisdiction of any department or agency of the United States, as required by 18 U.S.C. § 1001. By affidavit submitted in aid of the motion, defendant Brown's counsel has asserted that the public funds involved in this case—on the use of which the allegedly false time sheets were prepared—were received from and administered by an agency of the State of Wisconsin, the Department of Industry, Labor and Human Relations (DILHR), and not from or by an agency of the United States.

I do not read defendants' motion as an attack on the sufficiency of the count allegations. If it were, it would be unsuccessful, for the false statement counts all alleged that the particular defendant "cause[d] to be made a false written statement as to material facts in a matter within the jurisdiction of agencies [or an agency] of the United States." Counts III—V do not specify the federal agency or agencies involved, but refer simply to "federal funds" received by the Western Dairyland Supported Work Program under a contract between the Western Dairyland Economic Opportunity Council, Inc. and the Manpower Demonstration Research Corporation, "a private non-profit corporation which dispenses federal funds to private organizations for the implementation of social programs." Counts VI—VIII, however, specify that the public funds used by the Western Dairyland Supported Work Program were CETA funds "received . . . through the United States Department of Labor and the State of Wisconsin." Although Counts III—V might have been more precisely drawn to specify the agency-source of the federal funds involved, I think there is no doubt from the indictment as a whole that the funds are alleged to have been CETA funds originating with the federal government. As a matter of pleading sufficiency, I believe that the false statement counts contain an adequate jurisdictional allegation. *See United States v. Munoz*, 392 F.Supp. 183 (E.D.Mich.1974), *aff'd.*, 529 F.2d 526 (6th Cir. 1975).

It appears, however, that defendants disagree with the indictment allegations and assert that the public monies at issue came from a state agency, DILHR. What defendants raise by their motion, therefore, is a factual defense that may have favorable legal consequences for them if the government fails to prove the necessary jurisdictional element at trial. Although a similar claim was decided on the basis of a pre-trial evidentiary hearing in *Munoz*, 392 F.Supp. at 185, it is my view

---

**13.** Counts I and II are two parts of an eight-count indictment essentially charging the defendants with a scheme to use CETA trainees to further their private business interests, and then to conceal such use. In determining their legal sufficiency, both counts can and should be read together. "The indictment should be read as a whole and interpreted in a common-sense manner; it is contrary to the spirit of Rule 7 and the Rules generally to take counts of an indictment out of context and ignore their plain meaning." 8 *Moore's Federal Practice—Criminal Rules*, § 7.04, p. 7–20 (June, 1980 revision).

that the claim in this case should be resolved at trial. "A motion to dismiss is not the proper way to raise a [factual] defense." *United States v. Snyder,* 428 F.2d 520, 522 (9th Cir.), *cert. denied,* 400 U.S. 903, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970).

It will be my recommendation that defendants' motion to dismiss the false statement counts on the ground of lack of jurisdiction be denied.

### 7. Alleged Duplicity of Count II

Defendants have moved for dismissal of Count II, the joint charge of embezzlement and misapplication of CETA property, on the ground of duplicity. On the ground of multiplicity, they have also moved for dismissal of, or election among, the false statement counts in which they are individually charged. Although their arguments on the motions are related,[14] it is my view that the duplicity and multiplicity claims should receive separate treatment. This section of the opinion will therefore address the duplicity challenge to Count II, and the next section will consider the multiplicity challenges to Counts III—V (defendant Herklotz) and Counts VI—VIII (defendant Brown).

■■■ Duplicity is "the joining in a single count of two or more distinct and separate offenses." Wright, *Federal Practice and Procedure: Criminal* § 142, at p. 306. The prohibition against duplicity is intended to protect a defendant's Sixth Amendment right to notice of the charge, to insure that—in the event of conviction—the offense clearly appears from the verdict, and to eliminate any confusion as to the basis of the verdict that might lead to double jeopardy exposure if a subsequent prosecution is brought. 8 *Moore's Federal Practice—Criminal Rules* § 8.03[1], pp. 8-6—8-7 (June, 1980 revision).

In the context of the entire indictment in this case, the intent of Count II is clear; the government charges the defendants with a single continuous offense of embezzling and misapplying the services of CETA trainees having an aggregate total value of $1,477. As charged, therefore, the offense is a felony, punishable under 18 U.S.C. § 665(a) by a $10,000 fine or two years' imprisonment or both. Though not specified in Count II, it appears that the trainee services at issue were the work performed by various CETA trainees at a private business leased by the Cataract Corporation for its profit-making purposes. The conspiracy count alleges this to have been part of defendants' illegal agreement. Though this fact also is not specified in Count II, it appears that the trainees whose services were allegedly misapplied are the same trainees for whom false weekly time sheets were allegedly prepared, as alleged in Counts III—VIII. For some of these trainees, the value of services performed over the course of the measuring time period may have been less than $100; for others, the value may have exceeded $100.[15] Under § 665(a), if the value of the property embezzled or misapplied is less than $100, the offense is only a misdemeanor. Defendants argue that each alleged misapplication of the services of a particular CETA trainee should be charged as a separate violation; they apparently assume that it is better to be charged with several misdemeanors than one felony.[16]

The relevant question is whether the misapplication of the services of the several

14. Defendant Brown argues that the government has made an arbitrary selection of "prosecution units" by joining in the single indictment in this case: 1) an embezzlement/misapplication count that aggregates multiple offenses into a single charge (Count II); and 2) three false statement counts against each defendant that fractionate what he sees as essentially a single act by each of them. This claim of arbitrariness in the government's charging decision will be considered in the context of the separate duplicity and multiplicity issues.

15. Counsel for the government has so stated in an affidavit submitted in opposition to defendants' motions.

16. If Count II was dismissed, however, and the government brought a superseding indictment charging several discrete violations of § 665, it is by no means clear from the facts before the court at this point that all of the new charges would be misdemeanors.

CETA trainees may be aggregated into one chargeable offense, as the grand jury has done, or must be treated as separate offenses. Research by the parties and by the court has disclosed only one reported decision considering such a question under § 665, *United States v. Billingslea,* 603 F.2d 515, (5th Cir. 1979), where the following test was stated:

> Generally, the question whether a series of takings constitutes one or more than one offense under 18 U.S.C.A. § 665 must turn on the factual circumstances of each case. While factors such as the temporal and geographical proximity of the several takings may be germane, the focus of the inquiry should be at or near the starting point of the illegal activity. Of critical importance is the state of mind or intent of the actor prior to and simultaneously with the first taking. Closely related, and of equal importance, is evidence of acts done by the accused, either in preparation for the several takings or as an integral part of the first taking, which facilitate the subsequent takings or in some way aid the defendant in accomplishing them. Under this approach, therefore, the formulation of a plan or scheme or the setting up of a mechanism which, when put into operation, will result in the taking or diversion of sums of money on a recurring basis, will produce but one crime. Conversely, if all that can be attributed to the accused is an original intent to purloin and the evidence merely shows that this intent was acted on from time to time, the nature of the acts must be measured by the separate takings.

*Id.* at 520 (footnotes omitted).

The court in *Billingslea* applied its test to the case of an employee of a CETA funded youth employment program who had been convicted, among other charges of: 1) one felony count for violation of § 665 arising out of his deposit to his own account of several payroll checks issued to students enrolled in the program; and 2) an additional felony count for violation of § 665 arising out of his receipt, on several occasions, of payroll checks issued to him for hours he had not actually worked at the program.

As to the first count, the court held that a separate violation of § 665 was committed each time the defendant took a student check and deposited it to his own account. Though it acknowledged that "each taking may have been the result of one criminal intent," the court stated that the trial evidence had failed to show "that the intent was to do more than to commit several separate and distinct misdemeanors." *Id.* Accordingly, the felony conviction on this count was reversed and remanded for misdemeanor sentencing, because none of the checks issued to another person had exceeded $100.[17]

As to the second count, the court in *Billingslea* reached a different conclusion. It held that the trial evidence had shown "an intent to establish a mechanism for obtaining CETA funds for an indefinite period of time." *Id.* By accepting a teaching job at a local junior college during the hours of his CETA program employment, defendant was said to have created a situation in which he would unlawfully receive CETA funds, "on a regular and recurring basis," for hours worked for another employer. *Id.* The court therefore concluded that it was defendant's "single purpose . . . to receive, illegally, the unearned pay that would automatically come to him through the operation of the scheme." *Id.* Accordingly, his "unlawful receipt of pay on several occasions constituted but one violation of 18 U.S.C. § 665." *Id.*

Because of its divergent holdings, each side in the present case has cited *Billingslea* in support of their respective positions. From a purely conceptual view, I have difficulty reconciling the two holdings of the case, for it appears that the misapplication of the student payroll checks, like defend-

17. The court did not specify, however, whether defendant was to be resentenced for one misdemeanor or several (one for each check), or whether upon resentencing he could receive cumulative punishment more severe than had been imposed upon the original felony conviction.

ant's receipt of his own payroll checks for hours not worked, was a continuing course of conduct reflecting a single intent and could therefore be prosecuted in a single aggregate count of the indictment. The determining factor in *Billingslea*, however, appears to have been the difference in the trial evidence as to the existence of a scheme or plan with respect to the different types of takings.

It is my view that defendants' motion to dismiss Count II on the ground of duplicity should be denied at this time, but without prejudice to defendants' reassertion of the claim at an appropriate time during or after trial, at the later time in the event of conviction on Count II. I agree with the Fifth Circuit's view in *Billingslea* that a question of this kind may necessarily turn upon the unique facts of each case. Implicit in that observation is the advisability of finally resolving such questions only on the basis of a full factual array developed at trial.

■ From the record now before the court, which consists of nothing more definite than the allegations of the indictment, it is my view that Count II properly aggregates a continuous series of alleged misapplications of property into one punishable felony charge. This view is consistent with the holdings of other courts that have considered the crime of embezzlement, under other federal statutes, as one ordinarily consisting of several transactions that may be charged in a single count.[18] This view is also consistent with the test stated in *Billingslea*, for the indictment in this case clearly alleges that a misapplication of CETA trainee services was part of a conspiracy, a scheme to use such services for private gain. If the government's evidence at trial does not support the indictment's theory, the trial judge's decision on the duplicity question may differ from the view I now express.

It will therefore be my recommendation that defendants' motion to dismiss Count II on the ground of duplicity be denied.

## 8. *Alleged Multiplicity of Counts III—VIII*

Defendants' multiplicity challenge to the three false statements in which they are each individually charged raises a claim that is the converse of the duplicity claim just discussed. That is, they contend that the three false statement charges under § 1001 impermissibly fractionate a continuous course of conduct into three artificially separate offenses.

Multiplicity is the fragmentation or fractionation of one offense into several charges in the same indictment. Its principal vices are that a defendant faces the possibility of receiving more than one sentence for the same offense and that a jury may be misled by repetitious pleading into believing that a defendant committed several crimes. Wright, *Federal Practice and Procedure*, § 142.

■ I share the government's view that defendants' multiplicity challenge should be reserved for decision during or after trial, when such challenges are most usually raised, 8 *Moore's Federal Practice—Criminal Rules* § 8.07[1], p. 8–47, and when they can best be evaluated on the basis of the evidence actually presented at trial, *United States v. Overbay*, 444 F.Supp. 256, 258–59 (E.D.Tenn.1977). Reassertion of the motion after conviction, if that should occur, will be an adequate means of protecting defendants' constitutional rights in avoiding multiple punishment for a single offense. If a prejudicial effect is anticipated from the number of false statement counts, the jury can be given an appropriate limiting instruction.

For these reasons, it will be my recommendation that defendants' pre-trial motion to dismiss the false statement counts individually charged against them, or for election among those charges, be denied. I intimate no view on the ultimate success of

---

18. *E. g., United States v. Pavloski*, 574 F.2d 933, 936 (7th Cir. 1978); *United States v. Daley*, 454 F.2d 505, 509 (1st Cir. 1972). Both

cases involve the rejection of duplicity claims raised after conviction.

the motion if reasserted later on the basis of the actual trial evidence.[19]

A final comment is perhaps in order on defendants' contention that the aggregate charge in Count II and the separate charges in Counts III—VIII reflect an arbitrary selection of offense-units by the government. There has been no claim of impermissible prosecutorial vindictiveness or bad faith in the bringing of charges in this case. Moreover, I have no reason to believe that the normal process of decision on defendants' duplicity and multiplicity challenges to these counts will not provide a fully sufficient opportunity for vindication of defendants' claims against the method of charging in this case, if those claims are reasserted later and if they are found substantial. By itself, defendants' argument that Counts II and III—VIII are arbitrary provides no basis for dismissal of those charges.

### RECOMMENDATION

It is respectfully recommended that this court:

1. Adopt as its own the findings of fact incorporated in the opinion above.

2. DENY defendants' motion to dismiss the indictment on the ground of pre-indictment delay.

3. DENY defendants' motion to dismiss the indictment on the ground of allegedly prejudicial representations made to the Grand Jury.

4. DENY defendants' alternative motion for dismissal of the indictment, or for government election of charges, on the ground that the indictment charges both conspiracy and substantive offenses.

5. DENY defendants' motion to dismiss Count I on the ground that it charges a dual-objective conspiracy.

6. DENY defendants' motion to dismiss Counts I and II on the ground of their alleged insufficiency.

7. DENY defendants' motion to dismiss Counts III—VIII on the ground that they do not allege a matter within the jurisdiction of a United States department or agency.

8. DENY defendants' motion to dismiss Count II on the ground of duplicity.

9. DENY defendants' alternative motion for dismissal of Counts III—VIII, or for government election of one of these counts against each defendant, on the ground of multiplicity.

### MEMORANDUM

At the request of government counsel an additional pretrial conference was held on January 28, 1981, for the purpose of informing the court of a controversy that has arisen or will arise over the government's intent to introduce certain documents at the upcoming trial in this case. The controversy, and the background from which it arises, appear to be as follows:

During the Grand Jury investigation that ultimately led to the defendants' indictment, defendant Brown was served with a subpoena requiring him to produce certain records and documents of the Cataract Corporation, of which Brown was the president. Brown and the government subsequently reached an agreement whereby Brown produced the subpoenaed records through his counsel, Charles Giesen, in lieu of a personal appearance and production before the Grand Jury. The corporate records have remained in the government's custody since that time.

The government now desires to introduce some of the corporate records at trial, presumably pursuant to Rule 803(6), the business records exception to the hearsay rule, or some other pertinent provision of the Federal Rules of Evidence. As a condition precedent to their admissibility under Rule 803(6) or any other rule, an appropriate

---

**19.** I note, however, that on other facts in other cases, courts have upheld separate § 1001 charges for each of a number of false statements made pursuant to a continuous course of conduct. *E. g., United States v. Lanier,* 604 F.2d 1157 (8th Cir. 1979); *United States v. UCO Oil Co.,* 546 F.2d 833, 838–39 (9th Cir. 1976); *United States v. Bettenhausen,* 499 F.2d 1223, 1234 (10th Cir. 1974).

authentication and identification foundation must be established.

Defendant Brown has declined the government's invitation to stipulate to the necessary facts preliminary to admissibility. As government counsel explained at the conference on January 28, the government believes it therefore has the following options:

1) to subpoena Brown or his counsel, Mr. Giesen, to testify to the foundation facts at trial in the presence of the jury; or

2) to subpoena Brown or Giesen to testify to the foundation facts at a hearing before the trial judge conducted out of the jury's presence.[1]

A third option was suggested at the conference; namely, that the government counsel and agent to whom Giesen delivered the subpoenaed records testify that when delivered they were purported to be the records of the Cataract Corporation. It is unlikely, however, that such testimony could satisfy the particular prerequisites to admissibility under Rule 803(6).

█ In light of the perceived options, government counsel apparently requested the conference to obtain some guidance from the court in advance of trial, and perhaps to permit the court to rule on any objections that might be interposed by Brown and Attorney Giesen. While the government's interest in obtaining a prompt determination on the manner by which it may seek to introduce the desired evidence at trial is no doubt genuine and substantial, there is in fact nothing before me on which a ruling can be made. Attorney Giesen was served with a government trial subpoena at the conference on January 28, but has not yet moved to quash it. The government has not yet served a subpoena upon Brown, but has declared its intent to do so on the first day of trial. Until Giesen or Brown object to the subpoenas, and until the exact nature of the government's questioning is made clear, there is no ripe issue for court determination. If a ruling is to be made on this controversy, it will be made by the trial judge.

I believe it appropriate, however, that I express some comment upon the authority briefly cited by the government at the January 28 conference in support of the contention that the defendant may lawfully be compelled to testify as to the identity or authenticity of corporate documents produced by him in response to a proper subpoena.

The principal case relied upon by the government is *United States v. Austin-Bagley Corporation*, 31 F.2d 229 (2d Cir.), *cert. denied*, 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002 (1929), which held that an individual defendant could be compelled to testify at his own trial as to the identity of properly subpoenaed corporate records, of which he was the custodian. The court's conclusion followed from the well-established principle that the personal custodian of corporate books or records may not withhold their production on the ground that the corporate records might incriminate him. From this foundation, the court reasoned:

> While therefore, we do not disguise the fact that there is here a possible, if tenuous distinction, we think that the greater includes the less, and that, since the production can be forced, it may be made effective by compelling the producer to declare that the documents are genuine. In *Heike v. U.S.*, 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450, it is true that the testimony of the accused was given upon a hearing in a separate proceeding inquiring into a different crime, and the plea in effect claimed immunity for any other crime, in the proof of which the books produced might become a necessary link. Nevertheless, it would seem that the testimony was privileged, since it did directly incriminate the witness, though in another matter, and that the immunity was necessary to avoid it. Unless that case is to be disposed of on the theory that no

1. The government has not suggested that defendant Herklotz could supply the necessary identification and authentication.

such immunity was claimed, it necessarily held that the privilege did not exist. *Hence it appears to us that the case determines that testimony auxiliary to the production is as unprivileged as are the documents themselves. By accepting the office of custodian the holder not only exposes himself to producing the documents, but to making their use possible without requiring other proof than his own.*

31 F.2d at 234 (emphasis added). *Austin-Bagley* was subsequently followed in a number of cases, although none are of recent vintage. *Pulford v. United States,* 155 F.2d 944, 947 (6th Cir. 1946); *Lumber Products Assn. v. United States,* 144 F.2d 546, 553 (9th Cir. 1944); *Carolene Products Co. v. United States,* 140 F.2d 61, 66–67 (4th Cir. 1944); *United States v. Illinois Alcohol Co.,* 45 F.2d 145, 149 (2d Cir. 1930).

This unusual question has never been directly addressed by the Supreme Court, although the holding of *Austin-Bagley* was noted approvingly in *Curcio v. United States,* 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957), where the former case was distinguished from the situation then before the court:

> *United States v. Austin-Bagley Corp.,* 31 F.2d 229, and cases following it are relied upon by the Government. Those cases, holding that a corporate officer who has been required by subpoena to produce corporate documents may also be required, by oral testimony, to identify them, are distinguishable and we need not pass on their validity. The custodian's act of producing books or records in response to a subpoena duces tecum is itself a representation that the documents produced are those demanded by the subpoena. Requiring the custodian to identify or authenticate the documents for admission in evidence merely makes explicit what is implicit in the production itself. The custodian is subjected to little, if any, further danger of incrimination. However, in the instant case, the Government is seeking to compel the custodian to do more than identify documents already produced. It seeks to compel him to disclose, by his oral testimony, the whereabouts of books and records which he has failed to produce. It even seeks to make the custodian name the persons in whose possession the missing books may be found. Answers to such questions are more than 'auxiliary to the production' of unprivileged corporate or association records.

354 U.S. at 125, 77 S.Ct. at 1150 (footnotes omitted). Dictum in a recent Second Circuit opinion also suggests that *Austin-Bagley* is still considered good law within that circuit. *United States v. O'Henry's Film Works, Inc.,* 598 F.2d 313, 318 (2d Cir. 1979).

Finally, and in the event that *Austin-Bagley* were to be followed in the present case, I note that the defendant's testimony on the identity and authenticity of the corporate records should surely be given out of the jury's presence. Rule 104, F.R.Evid., specifically provides for such a hearing on preliminary questions of admissibility, and requires hearing outside the jury's presence "when an accused is a witness, if he so requests."